IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC MCGUIRE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 25-201 |
| ) | Judge Nora Barry Fischer |
| UNITED OF OMAHA LIFE ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM ORDER
ON MOTION FOR JUDGMENT ON THE PLEADINGS**

**I.  INTRODUCTION**

This is an action for judicial review of a decision by Defendant, United of Omaha Life Insurance Company, denying long term disability benefits to Plaintiff, Eric McGuire. Presently before the Court is Defendant's Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c). (Docket No. 18). For the reasons which follow, Defendant's Motion will be granted.

**II.  FACTUAL AND PROCEDURAL BACKGROUND**

In or about June, 2022, Plaintiff became disabled while employed by 98 Ventures. Plaintiff qualified for long term disability benefits under a Group Voluntary Long Term Disability Benefits policy (the "Policy") sponsored by 98 Ventures and administered by Defendant. (Docket No. 10-1). Defendant paid the Plaintiff's claim for Long Term Disability benefits for the period of December 4, 2022 through July 3, 2024. (Docket No. 1 at ¶ 8). The Policy provides for cessation of benefits when (*inter alia*) a beneficiary 'ha[s] been incarcerated or imprisoned for 31 days or longer". (Docket No. 10-1 at 28). The Policy further grants the administrator "the discretion and

the final authority to construe and interpret the Policy", including "the authority to decide all questions of eligibility". (*Id.* at 32).

Commencing in May, 2024 Plaintiff was subject to pretrial detention in connection with charges of stalking, harassment and terroristic threats. (Docket Nos. 1; 10 at 2). Because he was unable to afford bail, Plaintiff remained confined in the Allegheny County jail for a period in excess of 31 days. (Docket Nos. 21 at 2; 22 at 4). Plaintiff was never tried or convicted for the subject charges, which were ultimately dismissed. (*Id.*, Docket No. 1 at ¶ 10). Nevertheless, on July 2, 2024 Defendant denied Plaintiff's claim for disability benefits because of his jail confinement; and on December 18, 2024 Defendant denied Plaintiff's appeal. (*Id.* at 2-3; Docket Nos. 10-2, 10-3). Having duly exhausted administrative remedies under the Policy, in February, 2025 Plaintiff commenced the present action pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).[1] Following the close of pleadings, Defendant has moved for judgment on the pleadings. (Docket Nos. 18, 19). The matter having been fully briefed by the parties, Defendant's motion is ripe for adjudication.

## III.   DISCUSSION

### A. Standard of Review

Because the Policy constitutes an "employee benefit plan" under 29 U.S.C § 1003(a), it is governed by ERISA, which supersedes any otherwise applicable State law. *See* 29 U.S.C. § 1144(a). Under ERISA, an administrator is required to "act 'in accordance with the documents and instruments governing the plan' insofar as they accord with the statute". *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 101 (2013) (quoting 29 U.S.C. § 1104(a)(1)(D)). Thus, "[t]he award of

---

[1] Section 502(a)(1)(B) provides that "A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan"*.* 29 U.S.C. § 1132(a)(1)(B).

benefits under any ERISA plan is governed in the first instance by the language of the plan itself." *Dewitt v. Penn-Del Directory Corp.*, 106 F.3d 514, 520 (3d Cir. 1997) (Mannsman, J.).

In accordance with the trust law principles undergirding ERISA, the Supreme Court has held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). In the present case, the Court finds that the Policy clearly and unequivocally grants Defendant discretionary authority to construe the Policy and to determine eligibility for benefits. The Court of Appeals for the Third Circuit has expounded on the implications of such a grant:

> When a plan grants its administrator such discretionary authority, trust principles make a deferential standard of review appropriate, and we review a denial of benefits under an 'arbitrary and capricious' standard. Likewise, when an administrator acts pursuant to her authority to construe the terms of the plan, . . . we also apply the arbitrary and capricious standard when reviewing those interpretations . . . .
>
> An administrator's decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law. An administrator's interpretation is not arbitrary if it is reasonably consistent with unambiguous plan language. When a plan's language is ambiguous and the administrator is authorized to interpret it, courts must defer to this interpretation unless it is arbitrary or capricious. The determination of whether a term is ambiguous is a question of law. A term is ambiguous if it is subject to reasonable alternative interpretations.

*Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120-21 (3d Cir. 2012) (internal quotation marks, brackets, citations and footnote omitted).

### B. The Policy Provision Is Ambiguous

At the outset, Defendant contends that the Policy term "incarcerated or imprisoned" is "unambiguous as a matter of law", because "incarcerated" has "been interpreted by Pennsylvania's

3

federal courts . . . to . . . **include confinement of a person in jail** prior to a criminal conviction", and "Pennsylvania's state courts . . . have also interpreted 'incarceration' to mean confinement of a person to a jail prior to a conviction." (Docket No. 19 at 6-7) (emphasis in original).[2] However, the Court's review discloses that none of the seven "persuasive decisions" (*id.* at 7) cited by Defendant actually makes such an interpretation, or anything approximating it. Indeed, six of the seven cases involve plaintiffs who were convicted (or in one case pled guilty) prior to their confinement; and the seventh case did not involve incarceration or confinement at all, but merely cited one of the other cases as an example of ambiguity. Thus, although Defendant emphasizes that "[n]otably, **none** of the opinions discussed above have interpreted the term 'incarcerated' as requiring a criminal conviction", it is perhaps more notable that none of the opinions has interpreted the term "incarcerated" as **not** requiring a criminal conviction either. *Id.* (emphasis in original).

Notwithstanding Defendant's mischaracterization of the caselaw,[3] its interpretation does receive substantial support from dictionary definitions quoted in the cases that effectively equate "incarceration" to "confinement", with no mention of conviction or punishment.[4] *See, e.g.*,

---

[2] The Court is perplexed by the parties' focus on Pennsylvania caselaw, particularly in view of the Policy's provision that "[t]o the extent state law is not preempted by ERISA, . . . this policy will also be interpreted under the law of the State of South Carolina, without giving effect to the principles of conflicts of law of that State or any other state." (Docket No. 10-1 at 2).

[3] Defendant is not the only party that has mischaracterized cases in this action. After Defendant pointed out that Plaintiff had proffered two cases as purported authority for legal principles not addressed in the cited cases, Plaintiff apologized for the "oversight", but then proceeded to replace one bad case citation with another, invoking *Twin City Fire Co. v. Glenn O. Hawbaker, Inc.*, 118 F.4th 567, 575 (3d Cir. 2024) – a state-law insurance case that did not involve construction of an ERISA plan – for the proposition that "an ambiguous provision in a contract or ERISA plan 'must be construed against the insurer and in favor of the insured.'" (Docket Nos. 25 at 2, 3; 28 at 2). The Court reminds the parties' counsel of their obligation to use reasonable diligence to assure that their characterizations of authority submitted to the Court are accurate and reliable.

[4] *Cf. Chamberlain v. Unemployment Comp. Bd. of Review*, 114 A.3d 385, 394 (Pa. 2015) ("It is well-established that the common and approved meaning of a word may be ascertained from an examination of its dictionary definition."). Plaintiff argues "without supportive caselaw" that "reliance on dictionary definitions is evidence of ambiguity" because it "implies disagreement about the definition", and "this reasonable disagreement amongst reasonable parties supports the term . . . being ambiguous." (Docket No. 28 at 2). However, as reflected in *Fleisher*, *supra*, ambiguity

*Benedict v. Sw. Pa. Human Servs.*, 98 F. Supp. 3d 809, 817 (W.D. Pa. 2015) ("According to Black's Law Dictionary, 'incarceration' means '[t]he act or process of confining someone; imprisonment.'") (citing Black's Law Dictionary (10th ed. 2014)), *quoted in* Docket No. 19 at 6 (brackets in original). While such support is important to the Court's assessment of arbitrariness or capriciousness, it is patently insufficient to enable the Court to accept Defendant's contention that "incarceration" unambiguously includes pre-trial confinement "as a matter of law". Significantly, across three of the very cases Defendant relies upon, the Pennsylvania Supreme Court has concluded that the term "incarceration" is ambiguous because it could mean either imprisonment or confinement. *See Henkels & McCoy, Inc. v. Workers' Comp. Appeal Bd. (Hendrie)*, 776 A.2d 951, 955 (Pa. 2001) ("'Incarceration' is commonly defined to include both 'imprisonment' and 'confinement.'"); *Chamberlain v. Unemployment Comp. Bd. of Review*, 114 A.3d 385, 394-95 (Pa. 2015) ("Because 'incarceration' could be commonly understood to mean either imprisonment or the more broad definition of confinement, we conclude that the word is ambiguous . . . ."); *Mezzacappa v. Northampton Cnty.*, No. 40 MAP 2024, No. 41 MAP 2024, 2025 Pa. LEXIS 606, *23-24 (Pa. 2025) (same) (paraphrasing *Chamberlain*).

On the record before it, this Court finds that the term "incarceration" is ambiguous, as it could mean post-conviction penal confinement or it could simply mean confinement.[5] The Court therefore rejects Defendant's opening argument.

---

turns on whether a term is "subject to reasonable alternative interpretations", rather than on the parties' arguments or the nature of support adduced therefor.

[5] *Cf. also, e.g.*, Office of the Attorney General, Fiscal Year 1999 Annual Accountability Report, Chapter 5: Detention and Incarceration ("The Department is responsible for both detaining and incarcerating persons in Federal custody. Detention is the temporary holding of individuals accused of Federal crimes or those awaiting sentencing or deportation. Incarceration is the long-term confinement of convicted and sentenced offenders.") (available at https://www.justice.gov/archive/ag/annualreports/ar99/Chapter5.pdf (accessed July 27, 2025)).

### C. Defendant's Interpretation Is Not Arbitrary or Capricious

Defendant argues in the alternative that if "incarceration" is ambiguous, then Defendant properly resolved the ambiguity by exercising its discretion to construe the term to mean confinement, without regard to conviction. The Court agrees. Applying the standards set forth in *Fleisher*, *supra*, Defendant's decision is supported by oft-invoked dictionary definitions, and so is not "without reason"; and the Court is not aware of any principle or authority that would render Defendant's interpretation "erroneous as a matter of law". And because Defendant's interpretation is therefore not arbitrary or capricious, this Court "must defer to this interpretation". *Id.*

Plaintiff counters by arguing that an ambiguity in an ERISA plan must be resolved against the drafter (which in this case presumably means Defendant). Quite apart from the fact that some of the cases relied upon by Plaintiff do not support this proposition,[6] however, Plaintiff's argument is wholly foreclosed by the *Fleisher* decision, *supra*, wherein the Court of Appeals explicitly declined to apply "the well-established principle that ambiguous terms in an insurance policy 'must be construed most strongly *against* the insurance company that drafted it.'" *Fleisher*, 679 F.3d at 123 (italics in original). As that Court explained,

> [W]hile we have applied the doctrine of *contra proferentem* in the context of ERISA claims, we have done so only to decide whether the plan documents confer discretionary authority on the plan administrator so as to trigger deferential review, a decision we make under a plenary standard of review. Where, however, the abuse of discretion standard applies, we have made clear that we must defer to the plan administrator's interpretation of ambiguous plan terms unless that interpretation is arbitrary or capricious.
>
> [A]pplication of the *contra proferentem* doctrine would supplant deference to an administrator's reasonable interpretations of ambiguous terms with a presumption that such an interpretation is unreasonable. In addition to undermining the established deferential standard, contrary to Supreme Court authority, such an approach also eviscerates the provision of the . . . Policy which granted the

---

[6] *See* n.3, *supra*.

> administrator discretion in the first place. Indeed, the administrator can hardly be said to exercise discretion if her interpretations of the policy's terms is burdened by a presumption against the insurer.
>
> Notably, every Court of Appeals to have addressed the issue has concluded that a court reviewing a benefits decision for abuse of discretion cannot apply the principle that ambiguous plan terms are construed against the party that drafted the plan. District Courts in our Circuit also have recognized that the doctrine of *contra proferentem* does not apply where, as here, judicial review is constrained by the abuse of discretion standard.

*Id.* at 124 (citations omitted). Accordingly, this Court must decline Plaintiff's invitation to apply the doctrine of *contra proferentem* in the present action.

Finally, Plaintiff contends that Defendant's interpretation of the Policy should be set aside because it contravenes public policy by attaching a harsh consequence to a pretrial detention whose duration is assertedly attributable to indigence rather than to fault. It is not clear whether Plaintiff is arguing (i) that Defendant's failure to take the policies underlying pretrial detention into account renders its interpretation arbitrary and capricious, or (ii) that treating pretrial detainees and convicted prisoners alike so undermines a recognized public policy as to make contracts providing benefits only to those who stay out of jail illegal and unenforceable. In either case, the argument is not well-taken. As to argument (i), Plaintiff has not proffered any reason or authority to support the implicit principle that an administrator engaged by private parties to interpret their private agreement is required (or even permitted) to accord weight to public policy.

As to argument (ii), Plaintiff has not identified a particular public policy, or explained how that policy will be thwarted by Defendant's interpretation. If such a public policy were to exist, it must be drawn from federal law, because ERISA expressly preempts state law with respect to employee benefit plans. *See* 29 U.S.C. § 1144(a). And it apparently cannot be found in ERISA itself, as the statute explicitly eschews imposition of substantive (as opposed to procedural) requirements on covered plans. *See, e.g.*, *Hamilton v. Air Jamaica, Ltd.*, 945 F.2d 74, 78 (3d Cir.

1991) ("ERISA mandates no minimum substantive content for employee welfare benefit plans, and therefore a court has no authority to draft the substantive content in such plans."); 29 U.S.C. § 1191(c) ("Except as provided in section 1185 of this title,[7] nothing in this part shall be construed as requiring a group health plan or health insurance coverage to provide specific benefits under the terms of such plan or coverage.").

Because either version of a public policy argument is insufficiently developed and supported, this Court declines to alter or invalidate the Policy or Defendant's interpretation thereof based on any putative public policy.

### IV.    CONCLUSION AND ORDER OF COURT

In accordance with the Court's discussion above,

IT IS HEREBY ORDERED that Defendant's Motion for Judgment on the Pleadings (Docket No. 18) is GRANTED, and that Plaintiff's Complaint is DISMISSED, with prejudice;

IT IS FURTHER ORDERED that the Clerk of Court shall mark this case CLOSED; and

FINALLY, IT IS ORDERED that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of said Rules.

/s/ *Nora Barry Fischer*
Nora Barry Fischer,
Senior U.S. District Judge

Dated:  July 30, 2025
cc/ecf: All counsel of record

---

[7] 29 U.S.C. § 1185 governs "standards relating to benefits for mothers and newborns".